## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STARION ENERGY, INC., *et al*., | Case No. 18-12608 (MFW) |
| Debtors. | (Jointly Administered) |
| | **RE: Docket No**. **48** |

### INTERIM ORDER APPROVING SECURED POSTPETITION FINANCING

THIS MATTER having come before the Court upon the motion (the "DIP Motion")[1] of the debtors and debtors in possession (the "Debtors") in the above-captioned Chapter 11 cases (the "Cases") seeking entry of interim (the "Interim Order") and final (the "Final Order") orders authorizing the Debtors, pursuant to sections 105, 361, 362, 363, 364,  365 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Del. Bankr. L.R. 4001-2, for the Debtors *inter alia*,

(1) to obtain secured, superpriority post-petition financing up to an aggregate principal amount not to exceed $3,000,000 upon entry of the Interim Order and in the amount of $6,000,000  upon entry of the Final Order, plus accrued interest on the aggregate principal amount (the "DIP Loan") upon the terms and conditions set forth in the Loan Documents (as defined below), from GF Star IV, LLC (the "DIP Lender"), and for the Debtors to execute the Debtor in Possession Credit Agreement with respect to the DIP Loan substantially in the form attached as Exhibit A to the DIP Motion (as it may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Credit

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the DIP Motion and/or Loan Documents, as applicable.

Agreement"); and for the Debtors to execute a promissory note (the "Note") and Security

Agreement ("the Security Agreement") each in substantially the form attached to the DIP

Credit Agreement (the DIP Credit Agreement, the Note, the Security Agreement and all

ancillary documents at any time executed in connection therewith, collectively, the "Loan

Documents");

(2) to grant the DIP Lender: (A) a first priority perfected lien, pursuant to Section

364(c)(2) of the Bankruptcy Code, upon all of Debtors' Collateral that is not subject to

valid perfected and non-avoidable liens in existence at the time of the commencement of

the Cases, and (B) a second priority perfected lien upon all of Debtors' Collateral that is

subject to valid perfected and non-avoidable liens in existence at the time of the

commencement of the Cases; and

(3) to execute and deliver the Loan Documents to the DIP Lender and to reasonably

cooperate with the DIP Lender in obtaining for the DIP Lender valid and perfected security

interests and liens as security for the Obligations as set forth herein (the "DIP

Obligations").

The Court having considered the DIP Motion and the exhibits attached thereto, the

Declaration of Thomas Stiner in support of the chapter 11 petitions and first day motions, the

Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at

the hearing held on held on December 6, 2018 (the "Interim Hearing"); and adequate notice of the

Interim Hearing having been provided, and the Interim Hearing having been held and concluded;

and all the objections to the relief requested in the DIP Motion having been withdrawn, resolved

or overruled by the Court; and after due deliberation and consideration, and for good and sufficient

cause appearing therefor;

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

1.      On November 14, 2018 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

2.      The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

3.      This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the property affected hereby.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for these Cases and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").

5.      The Debtors need to obtain credit pursuant to the DIP Credit Agreement as each of the Debtors does not have sufficient available sources of working capital and financing to operate its business or maintain its properties in the ordinary course of business without the DIP Loan.

6.      The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Loan is vital to maximizing the value of each of the Debtor's estates. Without access to the DIP Loan, the Debtors lack sufficient funds to pay administrative expenses or maintain their respective operations pending the conclusion of the

Cases.  As a result, without the DIP Loan, the estate of each of the Debtors would suffer immediate and irreparable harm.

7.      The Debtors are unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Loan.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.

8.      Financing on a postpetition basis is not otherwise available without granting the DIP Lender:  (A) a first priority perfected lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon all of Debtors' Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the Cases, (B) a second priority perfected lien upon all of Debtors' Collateral that is subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the Cases, and (C) an allowed superpriority administrative expense claim in the Cases pursuant to Section 364(c)(1) of the Bankruptcy Code having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code.

9.      As a condition to the entry into the DIP Credit Agreement and the extension of credit under the DIP Loan, the DIP Lender requires, and the Debtors have agreed, that proceeds of the DIP Loan shall be used in a manner consistent with the terms and conditions of the Loan Documents.

10.      The DIP Lender shall, upon the entry of this Interim Order, be entitled to and receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code; and (b) upon entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

11.     The DIP Lender is willing to provide financing to the Debtors subject to: (a) the entry of this Interim Order; (b) approval of the terms and conditions of the DIP Loan and the Loan Documents and satisfaction of all conditions precedent in the Loan Documents; and (c) entry of findings by this Court that such financing is essential to each of the Debtor's estate, that the DIP Lender is extending credit to the Debtors pursuant to the Loan Documents in good faith, and that the DIP Lender's claims, super-priority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, re-argument or reconsideration of this Interim Order or any other order, or by the filing or pendency of any motion or appeal seeking to reverse, modify, vacate, amend, reargue, or reconsider this Interim Order or any other order.

12.     The terms and conditions of the DIP Loan and the Loan Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Loan and the DIP Liens (as defined herein) were negotiated in good faith and at arms' length among the Debtors, and the DIP Lender and are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

13.     Notice of the Interim Hearing and the relief requested in the DIP Motion was provided by the Debtors, by overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) each of the Debtor's twenty largest unsecured creditors; (iii) counsel to the DIP Lender; and (iv) all persons requesting notice in this case pursuant to Federal Rule of Bankruptcy Procedure 2002.  The parties have made reasonable efforts to afford the best

notice possible under the circumstances to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

14.     Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.     The DIP Motion is granted on an interim basis, subject to the terms and conditions set forth in this Interim Order.

2.     All objections to the DIP Motion, if any, to the extent not withdrawn or resolved are hereby overruled.

3.     The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the Loan Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the Loan Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Loan and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the Loan Documents.  The Debtors are hereby authorized and directed to pay (in cash or in kind as applicable) the principal, interest, fees, expenses and other amounts described in the Loan Documents and all other documents comprising the DIP Loan as such become due and without need to obtain further Court approval to the extent provided in the Loan Documents.

4.     Upon execution and delivery, the Loan Documents shall represent valid and binding obligations of the Debtors, enforceable, in accordance with the terms of the Loan Documents, against the Debtors, their estates, and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any cases under

chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any proceedings superseding or related to any of the foregoing.

5.      Subject to the terms and conditions set forth in the Loan Documents, and in order to prevent immediate and irreparable harm to each of the Debtor's estates, the Debtors are hereby authorized to borrow from the DIP Lender, up to $3,000,000 upon entry of this Interim Order. Authorization is hereby granted for the proceeds of the Loan to be used to meet each of the Debtor's obligations, in a manner consistent with the terms of the Loan Documents and this Interim Order and to pay when due expenses of the types and in amounts set forth in the DIP Credit Agreement.

6.      As collateral for the Loan, upon entry of this Interim Order, the DIP Lender is granted, pursuant to sections 361, 362, 364, and 507(b) of the Bankruptcy Code, a continuing, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interest in and liens on all rights, title and interests of the Debtors in the Collateral (the "DIP Liens").

7.      Subject to the Carve-Out, the DIP Liens shall constitute: (A) a first priority perfected lien, pursuant to Section 364(c)(2) of the Bankruptcy Code, upon all of Debtors' Collateral that is not subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the Cases, and (B) a second priority perfected lien upon all of Debtors' Collateral that is subject to valid perfected and non-avoidable liens in existence at the time of the commencement of the Cases.  "Carve-Out" means the sum of: (i) all fees required to be paid to the clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and 31 U.S.C. §3717 and (ii) all accrued and unpaid claims for unpaid fees, costs, disbursements, charges and expenses incurred at any time before an Event

of Default (as defined herein) by the Borrower's or any statutory committee's professionals whose retention is approved by the Bankruptcy Court to the extent such fees and expenses are approved by the Bankruptcy Court.

8.     The DIP Liens on claims and/or causes of action existing under the Bankruptcy Code, including, but not limited to, claims and/or causes of action existing under Sections 542, 544, 547, 548, 549, and/or 550 of the Bankruptcy Code shall not become effective until entry of the Final Order.

9.     Subject to entry of the Final Order, the Debtors shall not assert a claim under Bankruptcy Code § 506(c) for any costs and expenses incurred in connection with the preservations, protection or enhancement of, or realization by the DIP Lender upon the Collateral. The DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

10.     Upon entry of this Interim Order, the DIP Lender is granted an allowed superpriority administrative expense claim in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code having priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code.

11.     Upon entry of this Interim Order, the Debtors are explicitly authorized to execute and deliver the Loan Documents to the DIP Lender and to reasonably cooperate with the DIP Lender in obtaining for the DIP Lender valid and perfected security interests and liens for the Obligations set forth herein.

12.     The DIP Lender shall not have any obligation to make any loan or advance under the Loan Documents, unless all of the conditions precedent to the making of such extension of

credit under the applicable Loan Documents and this Interim Order have been satisfied in full or waived in writing by the DIP Lender.

13.    The Loan Documents may from time to time be amended, modified or supplemented in a non-material manner by the parties thereto without notice or a hearing if: (a) the amendment, modification, or supplement is: (i) in accordance with the Loan Documents; (ii) beneficial to the Debtors; and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided by fax or email) of the amendment, modification or supplement is provided to counsel for any Statutory Committee and the U.S. Trustee; and (c) the amendment, modification or supplement is filed with the Court; provided, however, that consent of any Statutory Committee or the U.S. Trustee, and approval of the Court are not necessary to effectuate any such amendment, modification, or supplement.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of any Loan Document shall be effective unless set forth in writing, signed on behalf of the Debtors and the DIP Lender; and in the case of material modifications, waivers or amendments, approved by the Court on notice.

14.    The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as to the extent necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens; (b) permit the Debtors to perform such acts as the DIP Lender may request in its sole discretion to assure the perfection and priority of the liens granted herein; and (c) permit the Debtors to incur all liabilities and obligations to the DIP Lender under the Loan Documents, the DIP Loan and this Interim Order.

15.    This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens by operation of law without the necessity of any further

action by the DIP Lender or filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized to file, as it deems necessary or advisable in its sole discretion, such financing statements, mortgages, notices and other instrument or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the DIP Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lender, all such financing statements, mortgages, titles insurance policies, notices, instruments, and other documents as the DIP Lender may reasonably request.  The DIP Lender may, in its sole discretion, file a photocopy of this Interim Order as a financing statement or notice with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien, instrument, or similar document.

16.    If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any successor Case, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) in violation of the Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit

under the DIP Loan, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such financing is secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender.

17.     The Debtors shall not sell, transfer, lease, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction or acquiescence) or as expressly permitted in the Loan Documents, it being understood that any sale, transfer, lease or other disposition of any of the Debtors or all or substantially all of the assets or properties of any or all of the Debtors shall at all times require the prior written consent of the DIP Lender.

18.     The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein shall constitute an event of default under this Interim Order, unless waived in writing by the DIP Lender (the "Events of Default").

19.     Upon the occurrence of an Event of Default, the DIP Lender shall deliver a notice of the Event of Default to Borrower, any Statutory Committee and the Office of the United States Trustee and (a) all commitments of the DIP Lender to make advances under the DIP Credit Agreement, if any, shall terminate; (b) the DIP Lender may declare the DIP Obligations owed by the Debtors to be accelerated and due and payable at once, whereupon such Dip Obligations, together with interest thereon, shall forthwith become due and payable, all without presentment, demand, protest or other notice of any kind from the DIP Lender; and (c) upon five (5) business days written notice to the Debtors, any Statutory Committee and the Office of the United States Trustee, the automatic stay of section 362 of the Bankruptcy Code shall be terminated without further order of the Court, without the need for filing any motion for relief from the stay or any other pleading, for the purpose of permitting the DIP Lender to foreclose on the Collateral and

proceed to do other all things provided by law, equity or contract to enforce its rights under the Loan Documents and to collect all amounts owing to DIP Lender. Notwithstanding the foregoing, after the DIP Lender has provided the five (5) business days written notice of the occurrence of an Event of Default to Borrower, any Statutory Committee and the Office of the United States Trustee, during that time, counsel for those parties may seek an emergency hearing before the Court for the sole purpose of determining whether an Event of Default has occurred. If the Event of Default is pursuant to Section 8.7 of the DIP Credit Agreement, the DIP Lender shall have the right (but not the obligation) to cure such default, whereupon any amounts expended by the DIP Lender in connection with such cure shall be considered an advance under the Note to be repaid in accordance with the Loan Documents

20.    Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

21.    The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained in the Cases. Nothing in this Interim

Order or otherwise shall be construed: (i) to obligate the DIP Lender in any way to pay compensation to or to reimburse expenses of any Case professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; or (ii) as consent to the allowance of any professional fees or expenses of any Case professionals.

22.     Proceeds from the DIP Loan may not be used to pay Ineligible Professional Expenses. "Ineligible Professional Expenses" means any fees or expenses incurred by any person, including a Statutory Committee or any Debtor in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (A) challenging the amount, validity, perfection, priority, ranking or enforceability of or asserting any defense, counterclaim or offset to, the DIP Obligations under the DIP Credit Agreement, or (B) preventing, hindering or otherwise delaying. whether directly or indirectly, the exercise by the DIP Lender of any of its respective rights and remedies under the DIP Credit Agreement, the Loan Documents, this Interim Order, or the DIP Lender's enforcement or realization upon any of the liens on or security interests in any Collateral.

23.     Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

24.     Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Lender or the DIP Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without

the prior express written consent of the DIP Lender, and no such consent shall be implied, directly or indirectly, from any action, inaction, or acquiescence by the DIP Lender.

25.    The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

26.    The DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender.

27.    Until and unless the DIP Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Loan which survive such discharge by their terms) and all commitments to extend credit under the DIP Loan have been terminated, and unless the Court orders otherwise following notice and a hearing, the Debtors  agree not to seek and/or consent to, directly or indirectly: (a) without prior written consent from the DIP Lender (i) any modification, stay, vacatur or amendment to this Interim Order (and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender); or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind of nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in the Cases or any successor Cases equal or superior to the DIP Liens; (b) without the prior written consent of the DIP Lender, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.

28.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of liquidation in the Cases; (b) converting the Cases to cases under chapter 7 of the Bankruptcy Code; or (c) dismissing

the Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Lender pursuant to this Interim Order and/or the Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any successor Cases, or following dismissal of the Cases or any successor Cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Loan are terminated.

29.    In the event of any inconsistency between the terms and conditions of the Loan Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

30.    A final hearing (the "Final Hearing") on the DIP Motion shall be heard on January 3, 2019 at 10:30 a.m. (ET). The Debtors shall promptly serve a copy of this Interim Order and notice of the Final Hearing upon (i) the U.S. Trustee; (ii) each of the Debtor's twenty largest unsecured creditors; (iii) counsel to the DIP Lender; and (iv) all persons requesting notice in this case pursuant to Federal Rule of Bankruptcy Procedure 2002. Objections to the entry of the Final Order shall be in writing and shall be filed with the Court no later than December 27, 2018, which objections shall be served so that the same are received on or before 4:00 p.m. (ET) or such date by (i) proposed counsel to Debtors, Gellert Scali Busenkell & Brown, LLC, 1201 N. Orange Street, Suite 300, Attn: Ronald S. Gellert and Michael Busenkell, rgellert@gsbblaw.com, mbusenkell@gsbblaw.com, (ii) counsel to the DIP Lender, Buchanan Ingersoll & Rooney PC, 919 North Market Street, Suite 1500, Wilmington, DE, 19081 Attn: Mary F. Caloway, mary.caloway@bipc.com; Mechanik Nuccio Hearne & Wester, P.A., 305 South Boulevard, Tampa, FL 33606, Attn: Alfred A. Colby, aac@flordialandlaw.com, and (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jane M. Leamy, jane.m.leamy@usdoj.gov.

31.    The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

**Dated: December 7th, 2018**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**